**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harvey Winingham,<br><br>   Plaintiff,<br><br>v.<br><br>Sig Sauer Incorporated,<br><br>   Defendant. | No. CV-22-01037-PHX-JJT<br><br>**ORDER** |

  At issue is Defendant Sig Sauer, Incorporated's Motion for Summary Judgment (Doc. 71-1, MSJ) accompanied by a Statement of Facts (Doc. 71-2, DSOF), to which Plaintiff Harvey Winingham filed a Response (Doc. 78, Resp.) accompanied by a Statement of Facts (Doc. 77, PSOF), and Defendant filed a Reply (Doc. 81, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

  Plaintiff owns a P320 handgun, which is designed, manufactured, marketed, and sold by Defendant. As part of its marketing efforts, Defendant advertised that the P320 "won't fire unless you want it to," and it will not discharge "unless the trigger is pulled." (PSOF ¶ 4.) When Plaintiff purchased his P320, however, he had not seen any of Defendant's advertising for the gun. (DSOF, Ex. A, Winingham Dep. at 51:5–11.) Shortly after acquiring the pistol, Plaintiff learned that Defendant was offering P320 owners a

voluntary "upgrade" that was intended to decrease the risk of the gun misfiring when dropped. (PSOF ¶ 7.) Plaintiff sent the gun in for an upgrade and received it back, and he specifically recalls reading again Defendant's statement that the gun "won't fire unless you want it to." (PSOF ¶ 9.)

Plaintiff alleges that on May 31, 2020, he was holding his P320 on his belly when it discharged without him touching the trigger. (Winingham Dep. at 77–92.) The bullet entered through Plaintiff's left hand and resulted in "the loss of a finger, significant injury to the entire hand, and severe pain and suffering." (Doc. 27, Am. Compl. ¶ 19.) Plaintiff filed an Amended Complaint against Defendant alleging (1) negligence, (2) strict liability, (3) breach of implied warranty of merchantability, (4) breach of warranty of fitness for a particular purpose, (5) breach of express warranty, (6) consumer fraud, and (7) common law fraud. (Am. Compl.)

Defendant moved to exclude the opinions of Plaintiff's expert and moved for summary judgment on each claim. On April 17, 2024, the Court granted Defendant's Motion to Preclude the Evidence and Opinions of Plaintiff's Expert, David Bosch. (Doc. 83.) The Court now rules on the Motion for Summary Judgment.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

1  The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the nonmoving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the nonmoving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)). And, for a genuine issue of material fact to arise, the nonmoving party may need to present more than "a self-serving declaration that states only conclusions." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

**III.   ANALYSIS**

    **A.   Plaintiff's Product Liability Claims**

Plaintiff brings two product liability claims: one under a negligence theory and one under a strict liability theory. He alleges that Defendant negligently designed and

manufactured the P320 and failed to warn that the gun was defective. (Am. Compl. ¶¶ 26–34.) His strict liability claim is less specific; rather than identifying whether he alleges defective design, manufacturing, or failure to warn, Plaintiff's Complaint simply repeats the general statement that the gun was "in a defective condition and unreasonably dangerous." (Am. Compl. ¶¶ 36–38.)

Under Arizona law, both of Plaintiff's product liability claims "must rely on the allegation that [the] product is defective." *See Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1194 (9th Cir. 2007). Defendant argues that it is entitled to summary judgment on each claim because Plaintiff fails to identify any defect in the P320. (MSJ at 11.) As Defendant points out, Plaintiff's claims rest entirely on his assertion that the gun discharged without him contacting the trigger.[1] Plaintiff offers no scientific or mechanical evidence that a defect exists.

Nevertheless, Plaintiff responds that he may prove his products liability claims by relying on the doctrine of *res ipsa loquitur*—"the gun is defective and unreasonably dangerous because guns do not discharge by themselves absent someone's negligence." (Resp. at 6.) Under Arizona law, a plaintiff may rely on *res ipsa loquitur* only if he can show that (1) the accident is of a kind that ordinarily does not occur in the absence of negligence, (2) the accident was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the plaintiff is not in a position to show the particular circumstances that caused the offending agency or instrumentality to operate his injury. *Cox v. May Dep't Store Co.*, 903 P.2d 1119, 1122–24 (Ariz. Ct. App. 1995).

Defendant contends that Plaintiff's reliance on *res ipsa loquitur* is misplaced because he cannot satisfy the first element. The "first element merely requires a weighing of the probabilities of the cause of the accident," and to defeat a motion for summary

---

[1] Plaintiff's Response also alludes to an alternative factual theory in which Plaintiff touched the trigger so lightly that he did not perceive the contact. (Resp. at 2–3, 6.) This version of the facts purports to both prove that the trigger was defectively sensitive and explain why Plaintiff testified that he did not touch the trigger. However, this theory is unpled, and these facts find no support in the record. The only evidence of whether Plaintiff touched the trigger is Plaintiff's testimony, and Plaintiff insists that he did not. (Winingham Dep. at 87:7–8, 89:13–15, 90:19–91:6.) On this record, any argument to the contrary is purely speculative and cannot support the claims' survival of summary judgment.

- 4 -

judgment, "the evidence presented must be sufficient to allow the jury to infer that negligence was more likely than not the cause of the accident." *Cox*, 903 P.2d at 1122. "This issue, '[i]n borderline cases, is properly left to the jury.'" *Id.* (quoting *Ruiz v. Otis Elevator*, 703 P.2d 1247, 1250 (Ariz. Ct. App. 1985)).

Defendant argues that the injury is not "of a kind that ordinarily does not occur in the absence of negligence" because, as Defendant couches the issue, the injury is a "self-inflicted gunshot wound," which is "precisely the kind of injury that *does* occur" absent such a defendant's negligence. (Reply at 3.) But Plaintiff testified that he did nothing more than lay the gun across his belly without contacting the trigger, and if a factfinder were to believe that testimony, it would appear much more probable that Defendant's negligence caused the injury. Thus, to weigh the probabilities of the cause of the accident, the Court would have to evaluate Plaintiff's credibility based only on a cold record—a task that is both difficult and generally disfavored in the law. In this case, however, the Court need not resolve that issue, because even if Plaintiff could satisfy this element, he has not satisfied the second or third.

Although the parties focus their briefing exclusively on the first element, the Court finds that the latter two elements preclude Plaintiff from relying on *res ipsa loquitur*. The second element, which requires Plaintiff to show that the defendant was in exclusive control of the instrumentality that caused the injury, "is not to be applied rigidly but 'is merely an aid in determining whether it is more probable than not that the accident was the result of defendants' negligence.'" *Sanchez v. Tucson Orthopaedic Inst., P.C.*, 202 P.3d 502, 504 (Ariz. Ct. App. 2008) (quoting *Byars v. Ariz. Pub. Serv. Co.*, 539 P.2d 534, 540 (Ariz. Ct. App. 1975)). And the third element requires Plaintiff to establish that he is "unable to show the particular circumstances that caused the offending instrumentality to operate [his] injury." *Cox*, 903 P.2d at 1124.

Plaintiff fails to satisfy both elements for essentially the same reason: Plaintiff was in sole possession of the gun at the time of the injury. Because the gun discharged while it was in Plaintiff's hand, it would be difficult for Plaintiff to argue that Defendant was "in

exclusive control" of the firearm. Perhaps there is an argument to be made—although Plaintiff does not make it—that here, "exclusive control" should mean control over the production rather than the operation of the gun. *See Cox*, 903 P.2d at 1123 (noting that the department store and elevator company defendants were "in exclusive control over the design, installation, and maintenance" of an allegedly defective escalator, explaining that "control" under *res ipsa loquitur* refers to "responsibility for the instrumentality," not "permissive use of the instrumentality"). But under the facts of this case, such an interpretation would run the risk of undermining the purpose of the second element, which is to "aid in determining whether it is more probable than not that the accident was the result of defendants' negligence.'" *Sanchez*, 202 P.3d at 504 (quoting *Byars*, 539 P.2d at 540). The situation is summed up nicely by Plaintiff's own framing of the facts: "Based on the record here, there are two possibilities. One is that [Plaintiff] . . . came into contact with the trigger with sufficient force to actually pull the trigger. In that case, he was arguably negligent." (Resp. at 6.) Because Plaintiff had control of the instrumentality that caused his injury, he has not satisfied the second element.

He likewise has not satisfied the third. This final element requires Plaintiff to establish that he is in no position to show the particular circumstances that caused the gun to misfire. *See Cox*, 903 P.2d at 1124. In analyzing this element, the Arizona courts have cautioned that "[i]nvocation of *res ipsa loquitur* is no substitute for reasonable investigation and discovery. The doctrine may benefit a plaintiff unable directly to prove negligence; it does not relieve a plaintiff too uninquisitive to undertake available proof." *McDonald v. Smitty's Super Valu, Inc.*, 757 P.2d 120, 125 (Ariz. Ct. App. 1988). As the owner and possessor of the gun, Plaintiff was in a position to show the circumstances causing the accident. This is exemplified by the fact that Plaintiff had an expert who performed "basic manipulation of the pistol." (Doc. 70, Ex. B, Ex. D. at 11:2–15.) That the expert's testimony has since been excluded is of no moment because the inquiry is only whether Plaintiff was *in the position* to show the circumstances that caused the misfire, not whether he actually did. Plaintiff's ability to obtain an expert who physically examined the

gun tends to show that Plaintiff was in a position to explain why the gun discharged, and he does not argue that he or any expert was incapable of inspecting the firearm or of otherwise acquiring explanatory information through investigation and discovery. Plaintiff thus fails to satisfy the third element.

Because Plaintiff cannot satisfy each of the three elements, the Court will not allow Plaintiff to rely on the doctrine of *res ipsa loquitur* here. And without his *res ipsa loquitur* theory, Plaintiff is left with no evidence to prove that the P320 was defective.[2] Accordingly, neither of Plaintiff's product liability claims can survive summary judgment. *See Cook v. Hawkins*, No. 1 CA-CV 18-03999, 2109 WL 2442263, at *2–3 (Ariz. Ct. App. June 11, 2019) (disposing of both a negligence and a strict product liability claim when each relied on a *res ipsa loquitur* inference). Moreover, under Arizona law, "the theory of liability under implied warranty has been merged into the doctrine of strict liability" such that Plaintiff's implied warranty claims "must stand or fall" with his strict liability claim. *See Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1976). Therefore, Plaintiff's claims for breach of implied warranty of merchantability and breach of warranty of fitness for a particular purpose also fail.

### B.   Plaintiff's Fraud and Express Warranty Claims

Plaintiff also brings claims for common law fraud, consumer fraud, and breach of express warranty, each based on alleged misrepresentations in Defendant's marketing materials that the P320 "won't fire unless you want it to" and will not discharge "unless the trigger is pulled." (Am. Compl. at 13–15.) Defendant argues that it is entitled to summary judgment on all three claims because Plaintiff fails to present evidence of Defendant's misrepresentations or his reliance thereon. (MSJ at 13.)

---

[2] Plaintiff briefly argues there is other evidence that the P320 is defective, pointing to several reports of unintended discharges. (Resp. at 7.) But at best, these reports show only that the P320 might fire without an *intentional* trigger pull. (PSOF ¶¶ 22–25.) They do not show that the P320 is capable of firing without any trigger actuation at all, which is Plaintiff's only alleged theory here. *See supra* note 1 (rejecting the theory that Plaintiff unintentionally actuated the trigger). These reports, therefore, do not support Plaintiff's claims.

1.  **Common Law Fraud**

The requirements for proof of common law fraud in Arizona are "very strict" and require a showing of nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) intent that it should be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance of its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Fridenmaker v. Valley Nat'l Bank of Ariz.*, 534 P.2d 1064, 1067–68 (Ariz. Ct. App. 1975). The "failure to prove any one of the essential elements is fatal to the cause of action." *Id.* at 1068.

Defendant lays out all nine elements and argues that Plaintiff cannot show a misrepresentation or reliance. (MSJ at 12–13.) Rather than addressing any of these elements, Plaintiff simply responds that "the elements of common law fraud are plainly present" and moves on to support his consumer fraud claim. (Resp. at 9.) Failure to respond to a motion may be deemed consent to the Court's granting of that motion. LRCiv 7.2(i). Accordingly, the Court finds that Plaintiff has waived the argument and Defendant is entitled to summary judgment on Plaintiff's common law fraud claim. *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (holding a party that presents no argument in support of its claim waives the argument); *see also Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him." (internal citations omitted)).

2.  **Consumer Fraud**

Plaintiff also brings a claim for violation of the Arizona Consumer Fraud Act. "The Arizona Consumer Fraud Act is a broad act intended to eliminate unlawful practices in merchant-consumer transactions." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (citing *State ex rel. Corbin v. Hovatter*, 698 P.2d 225, 226 (Ariz. Ct. App. 1985)). To succeed on a claim of consumer fraud, a plaintiff must show "1) a false promise or

misrepresentation made in connection with the sale or advertisement of 'merchandise,' and 2) consequent and proximate injury resulting from the misrepresentation." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016); *see also* A.R.S. § 44-1522(A). "[I]njury occurs when the consumer relies on the misrepresentation even though the reliance is not reasonable." *Holeman*, 803 F. Supp. at 242. But while reasonableness is not required, reliance must be possible. *See Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) (holding that reliance was not possible when the plaintiffs received a false report only after entering into a contract). Furthermore, the misrepresentation "on which liability is predicated must be logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction." *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944–45 (Ariz. Ct. App. 2000).

It follows, then, that Plaintiff must show he relied on Defendant's statements in connection with some transaction, and there are only two transactions at play here. First, Plaintiff purchased the P320, and later, Plaintiff elected to upgrade the P320. The initial purchase cannot be the transaction upon which Plaintiff stakes his claim because he admitted that he did not visit Defendant's website or see any advertising for the P320 prior to purchasing the gun.[3] (Winingham Dep. at 51:5–11.) It is thus impossible that Plaintiff relied on the alleged misrepresentations in connection with the purchase. Therefore, to support his consumer fraud claim, Plaintiff must show a misrepresentation that is "logically related to the [upgrade] transaction." *See Haisch*, 5 P.3d at 944–45. To that end, Plaintiff argues that he relied on Defendant's misrepresentation that the gun "will not fire unless you want it to" in two specific ways: (1) the statement is "why [he] sent [the gun] in" for

---

[3] Although Plaintiff did not view any of Defendant's advertising prior to purchasing the P320, he did conduct some internet research and "was influenced by the Army's decision to adopt the gun and the wide-spread consumer confidence (as seen in reviews), which were undoubtedly influenced by [Defendant]'s misrepresentations." (Resp. at 10–11.) Citing only an unpublished District of New Jersey case for support, Plaintiff argues that Defendant had the "capacity to mislead" consumers generally, and thus "one can reasonably infer that the misrepresentations . . . contributed to creating a general, widespread impression that the P320 was safe." (Resp. at 10–11.) The Court finds this theory unsupported in the law and too attenuated to constitute a violation of Arizona's Consumer Fraud Act.

1 the upgrade (Winingham Dep. at 60:10–12), and (2) the statement caused him to
2 mistakenly believe his P320 was safe to carry after the upgrade. (PSOF ¶ 11.)

Plaintiff's first argument is unavailing because, even if Plaintiff relied on the statement in choosing to upgrade the pistol, he has not alleged any harm arising out of the upgrade itself. In other words, Plaintiff did not allege that the statement misled him into upgrading the gun. Rather, in line with his second argument, Plaintiff asserts that the statement misled him to incorrectly believe the gun was safe after the upgrade.

The sequence of events, however, renders Plaintiff's argument problematic. As Plaintiff notes, Defendant made this statement "[p]rior to [him] acquiring the P320." (PSOF ¶ 4.) And Plaintiff further acknowledges that he read the statement both "before the upgrade" and "once again, . . . after the upgrade." (Winingham Dep. at 59:25–60:10.) Therefore, while Plaintiff may have believed the gun would not misfire after the upgrade, he cannot have formed that belief by relying on Defendant's statement in a manner that was "logically related to the [upgrade] transaction." Accordingly, there is no evidence from which a reasonable jury could find that Plaintiff relied on the statements in connection with the transactions of purchasing or upgrading the P320, and Plaintiff cannot maintain his claim for consumer fraud.

### 3. Breach of Express Warranty

Plaintiff's final claim is for breach of express warranty. To prevail on such a claim, a plaintiff must show an "affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain." *Dillon v. Zeneca Corp.*, 42 P.3d 598, 602 (Ariz. Ct. App. 2002). As analyzed above, Plaintiff cannot show reliance and thus cannot show that Defendant's statements became "part of the basis of the bargain" when he purchased or upgraded the P320. Defendant is therefore entitled to summary judgment on Plaintiff's breach of express warranty claim.

### IV. CONCLUSION

On this record, there is no genuine dispute of material fact as to any of Plaintiff's claims, and Defendant is entitled to judgment as a matter of law.

1     **IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary
2 Judgment (Doc. 71).
3     **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in
4 favor of Defendant and to close this case.
5     Dated this 7th day of August, 2024.

                                    _____
                                    Honorable John J. Tuchi
                                    United States District Judge